CROWLEY and wife, Respondents, vs. CITY OF MILWAUKEE, Appellant.

*October 3—October 23, 1917.*

*Municipal corporations: Street paving: Duty to enforce compliance with specifications: Negligence: Defects in pavement: Second assessment for resurfacing: Fraud upon lotowner: Right to recover damages: Waiver by payments, etc.: Special verdict: Instructions to jury: Harmless error.*

1. Where a city undertakes, under its charter, to pave a street at the expense of the abutting lotowners, it is its duty to enforce a substantial compliance by the contractor with the plans and specifications for such paving.

2. Where, through negligence of city officials in failing to secure compliance with the plans and specifications for a pavement, the bituminous surfacing thereof was worthless, it was a legal fraud for the city, after having required abutting lotowners to pay for such pavement, to assess against them also the cost of the resurfacing made necessary by such negligence; and the city is liable to the lotowners for the damages caused them by the second special assessment.

3. The right to recover such damages was not waived by a lotowner by paying the instalment bonds issued by the city to the contractor in payment for the original pavement, nor by signing an express agreement to "make no objection to any want of power, illegality, or irregularity in regard to the" first assessment.

4. Refusal of the trial court to submit special questions and to give instructions to the jury as to the claim that the defective condition of the original surfacing of the pavement was due to insufficiency of the plans and specifications furnished by the city, was not error, it appearing clearly that the defects were the result of negligence of the city authorities and the contractor in laying the bituminous surface under unsuitable conditions and in failing to comply with the specifications and the contract.

5. Where after giving a correct instruction as to the burden of proof the court, in applying it to the particular question to be answered, used the word "not" by mistake, thus contradicting the first part of the instruction, but the jury evidently understood and correctly applied the rule, there was no prejudicial error.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

This is an action by the plaintiffs to recover damages caused by the city's default in laying an alleged worthless street pavement in front of the plaintiffs' property. It appears that the plaintiffs owned two lots fronting on National avenue in the city of *Milwaukee,* and that the common council of the city in July, 1911, authorized the improvement of National avenue by laying a permanent bituminous macadam pavement having a concrete foundation. The property of the plaintiffs was assessed by the commissioner of public works of the city of *Milwaukee* as receiving $342.30 benefits by this street improvement. The city gave the plaintiffs permission to take an extension of the payment of the assessment, which was divided into five equal parts, becoming payable the first in 1912, the second in 1913, and annually thereafter for three years. In accepting extension of the assessment the plaintiffs agreed to make no objection to any want of power, illegality, or irregularity in regard to the assessment of their property.

It was shown, as the jury found, that this pavement as laid by the city in 1912 was worthless and that the street had to be resurfaced in 1914. The city assessed the plaintiffs' lots with the amount of benefits which had been assessed by the board of public works for such improvement at the completion of the original pavement and issued to the contractor who laid the pavement certificates for the work, amounting to $342.30, and the plaintiffs were required to pay these certificates in the form of special assessment levied by the city for the benefit of the certificate holder. The resurfacing of the street in front of the plaintiffs' property in 1914, on account of the worthless condition of the original bituminous surfacing of November, 1911, was again treated as a street improvement and benefit thereof to the plaintiffs' property was assessed to the amount of $350, and certificates to cover the cost thereof in front of the plaintiffs' property were issued by the commissioner of public works to the contractor to the amount of

$268.19. The plaintiffs refused to pay this assessment and the city treasurer sold their property at a delinquent tax sale for the payment of this special assessment. These certificates have not been paid and are still standing as liens upon the property.

The evidence shows that the concrete foundation of the pavement was laid in October, 1911, and that parts of the original bituminous asphalt surfacing were laid in the middle of November when the temperature was below freezing and after a period of cold and snowy weather. Expert testimony in the action shows that if any considerable amount of moisture is left on concrete it tends to reduce the temperature of the bituminous asphalt when it is spread on, rendering it unfit for the laying of a good pavement. The testimony shows that the bituminous top in question was laid late in the afternoon and in the evening after dark and that there had been snow and sleet on the concrete. The defense introduced testimony tending to show that this snow and sleet had been removed by oil torches and that the asphalt was of the proper temperature for surfacing. Harry E. Briggs, commissioner of public works, on November 15, 1911, on advice of the city engineer, ordered all city paving stopped until more favorable weather conditions should exist. These orders were not carried out.

It stands admitted that the paving showed defects in the spring of 1912, but it is alleged that this was due to the heavy traffic conditions prevailing on this street. The defendant claims that the two-inch bituminous asphalt top used was not sufficient under heavy traffic conditions. The resurfacing done in 1914 consisted of a three-inch top with a "binder" of crushed stone mixed in.

It appears that the plaintiffs made payments on the original assessment after the defects had been discovered in the pavement, and the city avers that the plaintiffs thereby

waived any rights they may have had to recover damages on account of any defects in the pavement.

The jury found, in substance, that the original surfacing in front of the plaintiffs' lots was worthless for the purpose intended; that the city officials through negligence or inattention allowed such imperfect pavement to be laid; that the surface of the concrete was not free from dirt, snow, ice, or water so as to make it suitable for the laying of the bituminous surface; that this unsuitable condition of the concrete foundation was the cause of the defective condition of the pavement; that it was a fraud on the part of the city to allow the bituminous surface to be laid in front of the plaintiffs' property in this manner; and that the pavement did not comply with the requirements of the contract and the specifications under which it was laid.

The court adjudged that the plaintiffs recover the sum of $341.50 and $66.19 costs and disbursements.

For the appellant there was a brief by *Clifton Williams,* city attorney, and *Mark A. Kline,* assistant city attorney, and oral argument by *Mr. Kline.*

For the respondents there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *Henry H. Otjen.*

SIEBECKER, J. The evidence abundantly supports the jury's finding that the pavement laid by the city in front of the plaintiffs' lots in November, 1911, was so defective as to make it worthless for the purposes for which it was intended. It is contended by the city that the worthless condition of the original bituminous surfacing laid on the concrete foundation for this street improvement was due to an insufficiency in the plans and specifications provided by the city for this street improvement, in that the specified two-inch bituminous covering to be placed on the concrete foundation was wholly insufficient for the traffic conditions over National

avenue in front of the plaintiffs' lots, and that a three-inch bituminous covering should have been provided to furnish a proper pavement for such street. We are satisfied that the evidence does not sustain this contention and that the trial court was right in holding that it supports the jury's finding to the effect that the worthless condition of the bituminous surfacing resulted from the negligent and imperfect laying thereof by the city officials and the contractor performing the work in the respects set forth in the foregoing statement. Under the facts shown and found by the jury there is no room for the claim that the city officials through an honest mistake of judgment provided imperfect and insufficient plans and specifications for the street improvement and that this mistake necessitated the resurfacing of the street with a bituminous covering in 1914. Under the established facts there is no ground for exempting the city from liability for laying the worthless pavement pursuant to defective plans and specifications furnished by the city officials. Under the authority conferred on the city to make this street improvement at the expense of the abutting lotowners, it devolved on the city to enforce compliance by the contractor with the plans and specifications furnished by the city for this improvement and to secure a pavement in substantial compliance therewith. It is apparent that the city failed to provide the pavement called for by the plans and specifications and that such default was due to the negligence of the city authorities. To require the plaintiffs to pay for the original pavement upon the basis that the city furnished a pavement in compliance with the plans and specifications, when in fact the bituminous surfacing was worthless, and to demand of them to pay the cost of the resurfacing of 1914, which was necessitated by the city's failure to furnish the pavement it charged the plaintiffs for in the first special assessment, constitutes a legal fraud on the plaintiffs as abutting lotowners and entitles them to recover the damages caused them by the

second special assessment. *Eiermann v. Milwaukee,* 142 Wis. 606, 126 N. W. 53.

It is averred that the plaintiffs have waived their right to the recovery of such damages by paying the instalment bonds issued by the city to the contractor in payment of laying the original pavement and by signing an express waiver of any illegality or irregularity in authorizing the improvement or making the assessment to cover the cost thereof. The express written waiver embraces only the agreement that the plaintiffs "will make no objection to any want of power, illegality, or irregularity in regard to the assessment" upon their property. This waiver manifestly does not include anything aside from procedural matters by the city in authorizing the improvement and laying the special assessment and is no waiver of any wrongful conduct on the part of the city authorities in executing the work, as claimed in this case. The contention that the plaintiffs' voluntary payment of the instalment bonds issued for the laying of the original pavement, after they had knowledge of the defective condition of the street, operated as a waiver of their right not to be charged for the cost of resurfacing to make good the original defective work, is not well founded. The plaintiffs have persistently refused to pay for this resurfacing to replace the original worthless surfacing. It would be an unreasonable and unjust implication to assert that the payment of the original assessment bonds by the plaintiffs changed their status or that of the city in relation to the duty of paying the cost of the 1914 resurfacing of the street. There is nothing inconsistent in paying the first assessment bonds and the plaintiffs' insistence that the city make good the defective surfacing. The facts present no case of waiver by the plaintiffs of their cause of action for the fraud committed against them by the city in assessing against their property the cost of resurfacing the street.

It is urged by the city that the court erred in not granting

a new trial of the case for errors committed in refusing to submit special questions and giving instructions on the inquiry whether or not the defective condition of the original bituminous surfacing was the result of an honest mistake of the city officials in adopting and specifying a pavement that was insufficient for the heavy traffic over the portion of National avenue in front of the plaintiffs' lots. The pavement laid on the avenue was the same for the whole of the street improved. It appears without dispute that the parts free from the defects which existed in the parts fronting the plaintiffs' lots remained in good condition to the time of the trial though subjected to like traffic as the defective parts. It also clearly appears that the defects complained of were of a nature that are not attributable to the traffic use of the street from November, 1911, to the early spring of 1912, but that they were the result of negligence of the contractor and the city authorities in laying the bituminous surface under unsuitable conditions and in failing to comply with the specifications and the contract under which the improvement was authorized to be made. In the light of these facts the trial court properly rejected the proposed special questions and instructions relating to the insufficiency of the plans and specifications furnished by the city.

The court instructed the jury on the burden of proof respecting the inquiry embraced in the second question of the special verdict submitted, to the effect that the plaintiffs had the burden of proving by clear and satisfactory evidence that the city officials, "through negligence or inattention," permitted a defective pavement to be laid, and that they were to answer this question "Yes" unless the plaintiffs proved that the surface of the concrete foundation was *not* free from ice and other matter as to make it suitable for laying the bituminous surface. It is manifest that the court in the last part of the instruction intended to state that the burden of

proof rested on the plaintiffs on this proposition, but confused the instruction by a negative statement, which upon analysis is shown to be contrary to the first part of the instruction. We have then a proper instruction on the burden of proof, but an erroneous statement to the jury in its application to the proposition referred to. An examination of the whole verdict shows that the answer to question 2 is in harmony with the jury's finding of all other issues included in the special verdict, which persuades us that the jury evidently correctly applied the instruction respecting the burden of proof, and, having done this, the confusing statement of the court in applying it to question 2 did not prejudice the appellant and hence does not constitute reversible error. We find no reversible error in the record.

*By the Court.*—The judgment appealed from is affirmed.